Please be seated. All right, we're for our third case, or our second insurance case. It's Insurance Day in the Gold Courtroom. We'll hear 24-19-77. Mr. Manchester? Good morning, Your Honors. May it please the Court? Edward Manchester on behalf of the appellant, the John C. Grimberg Company, Inc. And as you said, this is another insurance coverage dispute. And this is the one where we do disagree whether it's Maryland or Virginia, right? You are correct, Your Honor. Okay, thank you. There are three main issues. The first is, does a 50 percent loss of structural capacity constitute property damage, which the policies define as physical injury to tangible property? The second issue is, does the Navy's directive to demolish and rebuild the concrete walls constitute a claim? And the final issue is, does Virginia law govern the policies? The answer to all three issues is yes. Can I start with the end of those questions? I'm just trying to understand what is practically at stake with the question of whether Virginia or Maryland law applies. What difference would it make? The difference is the Virginia existing building code being used as an interpretive tool to interpret the policy and its meaning under Virginia law. Under Virginia law, it may or may not control. But at least if we're applying Virginia law, we have to look at Virginia statutes, right? When you apply Virginia law, you look to Virginia statutes in particular to interpret a policy under Virginia law. And that's really the issue. But isn't it, just to follow up, is it also pertinent on the legal obligation issue? It looked to me, now maybe you may have a different view of this, probably do, because you think there was a legal obligation. But it looked to me that Maryland law was more permissive on that than Virginia law. You may disagree with that. You may view them the same. But it seemed to me that choice of law might apply on the legal obligation issue. We view them as the same. And we believe some of the cases say that's basically the same. Just a quick background on what happened here. Grimberg constructed a new Navy middle high school at the Marine Corps base in Quantico. And Grimberg's subcontractor, the PCS group, negligently installed some concrete walls. During installation, the vertical rebar drifted to the center of the wall, and the wall lost its structural capacity. In addition, the building's structural framing system, which consists of a second floor slab, a roof, and steel beams, also lost 50% of its structural capacity. And the Navy said this presents a major concern for the structural integrity of the building. The Navy ordered Grimberg? So did the – this is what I'm trying to figure out. The part other than the wall that you just said lost 50% of its structural integrity. If you had – let's assume we could take that building apart piece by piece without damaging anything. Would the pieces other than the wall be usable? In other words, did they, like, inherently lose their own strength, their own structural integrity? Or was the overall structural integrity affected by the wall's problems? I understand what you're asking, Your Honor. And the first answer is under the Virginia existing building code, these other parts suffered substantial structural damage. So I could – are you saying they need to be scrapped? They need – if I'm a builder and I say, look, we've got to tear this down, but I've got some good other equipment. No, no, that's now weak. It can't be used. It's bowed. It's somehow insides aren't as strong. No, we're not saying that. Some of it was reused. But what we're saying is that when it can't carry the load it's designed to carry, that's substantial structural damage. But only – but you agree it can only not carry the load to the extent it can't because of the damage to the wall. That's the only thing that is physically different than it was supposed to be. I disagree in the sense that this is an integrated structural framing system. Okay. And that you have to calculate how loads travel through the system. Right. So it's not just the case of a wall failing and something sitting on top of it. You have an integrated system with a lot of loads. And, in fact, the government's designer, Ewing Cole, spoke to this in the engineering report called Cap 31 and mentioned the loads that were not calculated. Yeah, yeah. I read all that. But I'm still – I think that creates this question. And I think you're – I appreciate your candor. You're not saying, you know, here's the wall, here's the thing connected. This thing's fine on its own. But the problems with this mean it doesn't work its way. Well, we're not saying it's fine. And there's visual evidence that it's not fine. It's only not – But let me just tell you what the evidence is. And that is that these beams, the roof and the second floor slab, are all shored. And there's a million and a half dollars of shoring in the building. And that means there's hundreds of shoring columns under the steel beams supporting the roof and supporting the slab. And that's a visual indication that these pieces can't do what they're supposed to do. They can't support the loads they're supposed to support. Now, getting to this, you know, how do you resolve the fact there's no crack, the beam's not sagging, that's where we bring in the Virginia existing building code. And we go to how these terms are used in the construction industry. And in the construction industry, the Virginia existing building code establishes a building suffers substantial structural damage when it loses more than 33 percent of its structural capacity. As I recall, this is – they have some pretty, I'll say, fulsome arguments about why that statute, even assuming this is Virginia law, even assuming Virginia law applies, your colleagues on the other side have some pretty fulsome arguments why that statute, with respect, has literally nothing to do with this case. What is your response to that? Well, my response is the reason we're using this statute is to interpret the policy. We're not looking for a code violation. So we admit that this is the Virginia existing building code. And it does not apply per se to the project. But we want to – We should assume that the people who wrote this policy meant the interpretation of this policy be guided by a Virginia statute that doesn't apply in this situation. No, that's not what we're saying. But I understand your point. What we're trying to say is the people that wrote this policy did not define physical injury to tangible property. That's what they didn't do. And that's why we have a problem. And we have to figure out what do the words physical injury to tangible property mean. In the absence of a definition. In the absence of a definition. And in the absence of a definition, you go to the dictionary, and you see things where physical injury talks about things that can be measured and a loss of resistance. So we think under the dictionary, a loss of structural capacity fits physical injury. But then under the restatement of the law of liability insurance, Section 3, it says you can also go to state law and regulations when interpreting a statute. And it's very important that the Virginia existing building code, it's not just a building code, it's actually Virginia law. And that's on page one. Unfortunately, now you've got me interested in the choice of law question again. Because now we're back to my belief that this is almost certainly governed by Maryland law. So what connection, if any, is there between Virginia and the Excel or Old Republic insurance contracts themselves? And the answer is none, right? Like zero, literally no connection with the Commonwealth of Virginia? The actual contracts? The actual contracts? The insurance agreements that we're construing here. Virginia has a statute. No, no, no. The contracts. Where they negotiated in Virginia. Oh, oh. Where they delivered in Virginia. You're absolutely right. And what's missing here, and this is the problem. Where were they negotiated? That's not in the record. None of this is in the record. And what's missing is the binder that would be put together when you enter into an insurance contract. And it would have all the disclosures Grimberg made. Grimberg would disclose all the big projects it was working on. And that's where, if this wasn't a motion to dismiss and there was discovery, you would see references to Virginia, I believe. But that's not in the record. And it's not in the record because we're on a motion to dismiss. And that's a problem with the engineering issues, too. We should not be talking about structural integrity, loads. I can walk you through the Ewing-Cole report and show you how it went from eight kips to four kips. But that's, in my view, ridiculous on a motion to dismiss. These are engineering issues. Why isn't the Navy's demand here not just a demand for contract performance? Because the Navy, because this isn't just a contract. It's a contract that's governed by the Contract Disputes Act and the FAR. So there's a whole regulatory regime on top of the contractual relationship. Right, but there's a contract to build a building, and the building is faulty. And so the Navy is saying, make good on our contract. Build a building that we can actually use. To me, that seems like a classic breach of contract not covered by a CGL policy. And what's layered on top of that is the FAR. And the FAR says that if you don't do what the Navy says they've asked you to do, they can default terminate you. They can backcharge you all the costs of correcting the work. And the Garrett case says this is a claim. The Garrett case was a claim. Okay, but hold on. You keep saying it's a claim, but that's not the question. The question is whether it's a claim for damages. And I don't understand how when the Navy says, give me the thing you promised to give me, the Navy is making a claim for damages. The Navy is making a, maybe that's a claim, but at most it's a claim, do the thing you contracted to do, not give me damages to compensate me as best the law can for the thing that you didn't do. So this goes to the Bosch and Lomb case. I guess I'll just say for me it's not helpful to respond to my questions of how does this fit with the language of the contract by saying it's like this other case. I'm asking as a matter of how the English language works, what the Navy is doing there does not strike me as a claim for damages. Damages are anything the Navy can make you do where you have to pay money. That's not what damages mean in law. Anything that sounds like a demand for specific performance, it does not sound like a demand for damages. Your Honor, can I read you a quote from the Bosch and Lomb case? I'm sorry, remind me what court this is? This is the Maryland Court of Special Appeals. Okay. And it talks about how we Of course if Virginia law applies I'm not sure why we care what they think, but if Maryland law applies I think we definitely do. But this is where we are in, we're looking for cases where you have sort of either a contract plus a regulatory regime. And under this regulatory regime the government can make you do things. And then the issue becomes when the government It just feels like we're citing Virginia law when you think Virginia law is good for you and Maryland law when you think Maryland law is good for you. But it's not that simple because there's not a lot of authority on when it's, again, it's not a regular contract. It's contract plus the CDA plus the FAR. Bosch and Lomb is analogous because there you have an environmental regulatory regime. And the definition of damages that the Bosch and Lomb court affirmed was anything that a third party can make you pay for because of damage to that third party's property. And it goes on, it says policyholders This isn't damage to the third party's property, this is failure to complete a job under a contract. That's where I'm stuck. There's a business, there's a government contract, there's a failure to perform under the contract, and there's an action essentially for specific performance under the contract. So where do we find that there is, where is there damage to a third party's property? So that goes back to the damage we need here, which is property damage. And we have property damage. What we're talking about here is whether or not there's a claim under the policy. And when the government in this situation where they threaten you with the default termination, well, first of all, where there's a claim begins with the Garrett case that says it's a claim. The Garrett case was interpreting what is a claim under the Claims Dispute Act. That's not where we are. The question isn't whether there's a claim under this policy and this policy language. So why is Garrett even relevant? Garrett is relevant because the complaint says the reasonable expectations of the parties at the time of forming this contract was that it would cover Contract Disputes Act claims. In other words, Greenberg is a federal government contractor. This is the kind of work they do, almost exclusively. Not Contract Disputes. Claims. I understand what you're saying, but a claim under the Contract Disputes Act, and why that's important, Greenberg is a federal government contractor. This is the kind of work they do. This is a claim under the Contract Disputes Act, which the Garrett case says this is. That case says it's a claim for damages, not just a claim? Well, that is a claim from the perspective of the government, it's a claim. And in Garrett it's a claim for nonmonetary relief. But this contract says claim for damages. So here's another way to think about it. But now you have to flip it, because it is damages from Greenberg's perspective. This is another reason it's hard for me to conceptualize. So what happened here is the Navy said fix it. And then what happened is your client spent some amount of money fixing it, and using some sort of internal accounting software calculated how much. I mean, they bought supplies. Let's assume that's relatively easy, that you can just figure out what the supplies cost. But I also suspect that when you're calculating how much this costs you, you're doing things like valuing the work of your employees, the time for your employees. But you didn't actually write checks for that. But you want them to pay you based on your estimates of what it costs you to do something that you had to do under the contract. And again, this starts to sound very far away. As opposed to a claim for damages would be the Navy says you gave us a school that's $2 million less good than the school we bought. $2 million, please. And then you go to your insurance company and say I had to pay the Navy $2 million. Give me the $2 million I had to pay the Navy. But what here you want to do is say I did some work and I'd like to value my own work and then make them pay for the value that I place on the work that I had to do. And that just does not sound like a claim for damages to me. Why is that wrong? It is a claim for damages. Sure. I understand that's your view. Why is what I just said wrong? I think there are several things wrong in there. First, every dollar Grinberg is seeking is a dollar they paid out of their pocket to correct the non-defective property. So now we have to go all the way back to French and Stanley Martin. And they create this framework of what you can recover under a CGL policy. And French and Stanley Martin say there's no coverage for the contractor's work. So there's no coverage for Grinberg's work. There's no coverage for a subcontractor's own work. So that's off the table, too. But there is coverage for damage to otherwise properly performed work that occurs as a result of a subcontractor's defective work. And that's what we're trying to recover here. So we believe there's already a framework in the Fourth Circuit for recovery that gets you past the occurrence. The issue then becomes, is this property damage? All right. Thank you, counsel. I'm sorry. Good morning. Yes, sir. Glad to hear from you. Good morning. Ezra Goligly on behalf of Excel Specialty Insurance Company. I'd like to take one minute to talk about the principal issues before the court because there is a slight disagreement between the parties there. We agree on two of the issues, whether there was a claim for damages asserted by the Navy and the structural impairment issue. But I don't believe that choice of law is a truly significant issue before the court today. And I think there's an issue that's been omitted. You don't think there's a choice of law issue because the law is the same in most states? Essentially. I agree with the district court that there's no fundamental difference between Maryland law and Virginia code. But that depends on your views on the Virginia code. Because if Maryland law applies, the Virginia code definitely doesn't. I think we've advocated for Maryland law for two reasons. One, it's correct. Number two, it clearly disposes of a number of important issues. We don't pick choice of law because it's easier. We pick choice of law because it's the right choice of law. They may be no different, and that's a good reason we don't have to try choice of law. But if they're different, I don't know how we just say it's the correct law. If Virginia law applies, but you think Virginia law is wrong, we don't say, okay, that's a good reason. We'll go find another state's law for you. Let me be a little clearer. The only, as Mr. Manchester acknowledged, the reason why they want Virginia law is the Virginia existing building code. Well, what he also says is that the issue of choice of law can't be decided at this stage because it necessitates discovery. I don't understand that position because Grunberg has argued throughout that choice of law is disposed of here by a Virginia statute. A statute that says basically if there is property that is owned, used and maintained in Virginia, then any insurance contracts relating to that property must be governed by Virginia law. Okay. We could reject that argument and say, well, that's not dispositive. But then that just leads to the question of, well, then what is dispositive? Assuming that you're right about that, that that statute doesn't just decide it. Then I think in that case you're left with the Lex Loci choice of law analysis, and here the policies were delivered to Grunberg in Maryland. That's what I thought, but your colleague seemed to me to say during his argument that maybe that's not something we know from the face of the complaint. I mean, the policy is, you know, the XL policy is in the record at JA 281. And it was attached to the complaint and is properly. It's attached to the complaint and you can see exactly where it was delivered. It was delivered to Grunberg in Maryland and the broker is a Baltimore broker. So I think it can be decided on the facts before the court. What was the issue you said that wasn't raised before, identified before? Well, I think the issue that wasn't identified before, and it's a thread that runs through every question your honors have asked this morning, is whether a general contractor like Grunberg can convert its liability insurance policies essentially into a performance bond. Or as Judge Hamilton put it in the French decision, a source of warranty for contractually provided workmanship. And the answer is you can't. The warranty for contractually provided workmanship is a performance bond. And we have a performance bond in this case. That issue, I hear you, feels framed differently, but effectively the same issue. You're right, it does go through the legal demand issue and it also involves whether there's damage to other property, right? That's right. I mean, Judge Berner, as you pointed out, what makes this claim any different from the Navy simply insisting on contract performance? That's exactly what the Navy did in its letters. But what strikes me about the policy, and I know this isn't in the briefing, but there's the own work exclusion, which I think gets to this issue you're saying, which is that this isn't a bond for performance, but then there's an exception to that exclusion for work that is subcontracted. So that's where we get tricked up, because if the own work exception says we're not covering you for work you're doing, you need to get a bond for that. But then there's an exception to that exclusion that says, well, if you subcontract, then we will cover you. Doesn't that get us back under coverage? It potentially would if the work performed by the subcontractor, in this case the defective ICF walls, caused physical injury to tangible property that wasn't defective. And so this goes to your question, Judge Qualabong. If you deconstruct the elements of the building, you remove the walls and you take the slabs that are connected to the walls, and you ask, are those slabs, are those other elements, are they physically injured in any way? The answer is no. And it has to be no for a few different reasons. Number one, the allegations of the proposed Second Amendment complaint and every other complaint that Grimberg filed in the case do exactly what Mr. Manchester described. This is rebar that's placed in concrete, and then concrete is poured. And here the mistake was that the rebar wasn't reinforced, and so it all drifted towards the middle. The point is, under the allegations of the Second Amendment complaint, when the concrete dried, the defect was encased in concrete. There was literally no way for that defect to magically get out of the concrete. Well, it could create some kind of subatomic weakening of the other parts of the building, and it could be, in that case, exactly like French, where the exterior of the building was damaged, and therefore there was damage to the interior of the building. And so here the framing walls or beams were defective, and so it could damage the interior. And I think that's what they're, at least, there was weakening of the other parts of the construction. Respectfully, Your Honor, I don't believe that's their argument. Their argument is that if you have an engineer analyze the structural properties of the building as a whole, and you in particular focus on this calculation called moment capacity, which Grinberg defines in, I think, page 9 of its opening brief, moment capacity is the point at which a structure will fail if an external force of sufficient quantity is applied to it. So your argument is that you could never have liability under your policy for damage that results from a subcontractor's work. Only in this case, that isn't what it was alleged. Exactly. So that isn't really your performance bond issue, your performance bond argument. You're simply back to saying there was no injury alleged under the policy. Well, that's exactly right, Your Honor, but they dovetail, because I think if you were to find, if this court were to take the unusual step of concluding that compromised structural integrity on these facts, as alleged, gives rise to coverage under a liability policy, the result is that the liability policy covers exactly what a performance bond would cover. But I'd like... I think that the comment about the your work provision is the thing that would most directly tie this to a performance bond, and the exception for the subcontractor kind of reduces, you know, the force of that. But your point, I think, is not... The plaintiffs don't allege any, you know, compromise of the other parts. I mean, in other words, there's not... If the walls were built correctly, those would be, you know, those other parts would be the exact same way they are now. It's just that the problems with the walls ripples in the overall structure integrity, because they all tie into it. That's correct. And so that's our question. I mean, it's probably mathematically... It seems mathematically feasible that the defects in the walls can create structural integrity issues in other parts of the building, because these are central to the overall capacity. But whereas we have a, you know, rebar that's in the wrong place and voids in the wall, we have nothing like that in any of the other parts. That's exactly right, Your Honor. And I think it's worth taking just a minute to drill down on the allegation of the Second Amended Complaint on that issue. Is that the one that they tried to amend with? I can't remember. Yes, that's the one that they tried to amend with, and ultimately the district court said no, because it would be futile. All right, go ahead. So the argument based on that complaint in the brief gets down to this idea of moment capacity. Again, that point at which a structure will fail if an external force is applied to it. And I want to make a few points about that, because I think it goes to the heart of this issue about whether there is any physical injury to tangible property alleged. The first point I want to make is that moment capacity is inherently predictive and future-oriented. It's a calculation that looks at the building and makes an assumption about what kind of external force is applied to it. What kind of external force is going to be applied to it when the building will break? But there never was an external force that was applied to this building. The problem I have with your argument is from a policy standpoint, it creates an incentive for insurance to wait until a building collapses and there's injury to people or property, rather than making a claim on their policy at the time they know that there's a significant risk that injury will take place. And so, I mean, it just strikes me, a better reading, perhaps, that once there is a claim made on the basis of a risk that this injury will take place, and it's based on a failure of the structure, the structural integrity, which is what they say in the complaint repeatedly. They say in the Second Amendment complaint, the primary structural failing system was physically injured because it couldn't move. It could no longer carry the design load. So they make an allegation in their complaint, which I think possibly gets them over a motion to dismiss, that the primary structural framing system was physically injured and so could no longer carry the design load. So should they have just waited, then, until it collapsed and then made the claim? Two points, Your Honor. First of all, the Maryland Court of Appeals in the Schlosser decision took on and answered the policy question that you've raised and held in a case where you had structural failure of the structure. You had structural instability and a hurricane was coming. I mean, the force that would be applied to create property damage, it was impending. And in that case, the contractor fixed the problem and then sued some liability carriers and it went to the court. And they grappled with exactly that same question. And they said the answer is there's no coverage. Even though the preventative measures make sense and the contractor in that case made the very argument you're making, we should, as a policy matter, encourage this kind of coverage under CGL policies. The Maryland Court of Appeals said no. There's no occurrence under the policy. There's no property damage. And it used language that goes directly to this case. So one of the arguments they rejected is the structural instability argument. Is there, before you get, well, I'm just thinking about this. I want you to finish your answer. But is there insurance that could be purchased that would cover preventive actions like the situation Judge Berner talks about? I mean, lots of times we look at insurance cases and we're dealing with a policy and people can elect to get certain types of coverage and they're not. But there's some risk policies that would permit that type of coverage, aren't there? There are a number of different products in the marketplace that would cover this. There is a form of coverage known as rectification coverage that allows, ensures against the risk of a mistake being made during construction and then pays up to its limit under certain circumstances to fix it. So the answer is yes, there are products out there. I didn't mean to interrupt your response to Judge Berner. She asked a question and, oh, I didn't mean to interrupt it, but I'm now trying to signal you back. So in the Schlosser case, the court rejects the idea that property damage was suffered, this is a quote, by reason of a diminution of or imminent threat of loss of lateral support. It's the same concept of structural impairment that we have here. And then again, in the Schlosser decision, the court says the action taken by Schlosser was intended to prevent the type of harm the policy would have covered and no such harm, in fact, occurred. That is exactly what happened here. And the allegations of the proposed second amended complaint, they go so far as to specifically say that, and I can find it, I think I believe I can put my hands on it very quickly, that the building as constructed couldn't anticipate the design for seismic loads and blasts. So the critical point to realize is the way that Greenberg has framed these allegations, they are all talking about future damage. The moment capacity calculation is a prediction of when a building will fail under a hypothetical load. That hypothetical load never took place in this case, and as a result, there was no property damage. I'd like to, you know, briefly touch on the idea that the directive, the Navy's letters directing Greenberg to perform under its contract were not a claim for sums to be paid. They were not paid as damages because of property damage. I mean, there is the language of the letters themselves, which say nothing more than that. But say nothing more than do what you agreed to do. Exactly. And they invoke a provision of the federal acquisition regulations that is incorporated in Greenberg's contract. That provision also says, you know, if the building isn't constructed as we agreed to, we can instruct you without charge to fix the problem. We've pointed out in our papers that for the Navy to have asserted a claim for sums to be paid as damages because of property damage, they would have had to proceed under an entirely separate part of the FAR. They would have had to ultimately refer the claim to the Treasury Department after itemizing the damages that they're actually seeking. And so an example of this would be like the Navy was like, you've done such a bad job, we're just done with you. Please leave. I'm going to hire someone else to do the job correctly. I'm going to have to pay those folks some sum of money. You need to pay me what I had to pay those folks. And I'm going to now under the, exactly, Your Honor, and under the federal acquisition regulations, I'm going to refer this matter to the Treasury, and then I'm going to sue you. And I'm going to sue you for what I paid those other folks to do it instead, or to fix the mess you made. And then we go to court. Grimberg gets to hire a lawyer. They get to assert defenses. Ultimately, that claim for damages is reduced to a judgment or a settlement. And at that point, arguably, Grimberg could present that claim to its insurance carriers, and they would do whatever they would do with it. That didn't happen here. And the other thing that's unusual about this case is that Grimberg alleges in its second amended complaint that had a claim for damages ever been asserted against it, it would not have paid them. This is JA674 footnote two of their second amended complaint. Grimberg says, quote, the Navy sent its claim letter not just to Grimberg, but to Liberty Mutual, Grimberg's bond insurer, that would have been responsible in the event Grimberg had not complied with the Navy's direction. So can I ask a question on this point? It seems to me there's a few issues or sub-issues. One is, do we have a legal obligation to pay damages? And one part of that is, well, you're really not seeking damages like consequential damages. You're seeking performance of your obligations. And you're saying that's not enough just inherently, it sounds like. And then there's another issue, isn't there, that when you're just demanding something, a demand is a demand. I mean, it could be a claim for damages, but it would still be a demand. Normally demands aren't a legal obligation. People make demands all the time. And it has to have some force of law. And usually those two forces of law are a judgment or a settlement agreement. Now, there does, however, seem to be some law, at least in your colleague talked about the Bausch and Long case, when at least in a regulatory environment, maybe you can be in a regulatory environment where that environment creates something where the obligation can arise before a settlement or a judgment. Am I right at least in understanding your argument that you're disagreeing that just the nature of this claim isn't a claim for damages, one. And then two, you're saying even if it was, it's just a demand and it wasn't a legal obligation. That's correct. And I would add a third point that even if it was, Grimberg has alleged in its complaint that the performance bond would have paid, not Grimberg. But let's assume you lose on the first one, just hypothetically. Why is this regulatory naval system not akin to the environmental system in Bausch and Long? Because in Bausch and Long, all of the environmental cases, including Bausch and Long, and Bausch and Long says this, there's a strict liability statute in place. And the administrative branch that is investigating the potentially responsible party for a pollution incident, they can unilaterally convert this into a claim for damages. And the courts have recognized that. That still seems, to use Judge Hyten's good phrase, that seems inconsistent with the English language. Because if they did it and it was, you know, it was someone else's property, I mean, strict liability makes it harder to defend. But you still have defenses. I see that I'm out of time. I don't disagree, Your Honor. And I just point out that the cases that we've cited, in particular Dragas 2, an electric motor, they hold exactly what Your Honor is saying. Dragas 2, for example, mere threat of litigation isn't enough to generate a claim for damages, for damages to be paid as property damage. An electric motor is the same thing. You need something in the form of a coercive order. We don't have that here. Thank you.  My colleague made a couple of references to some engineering points that were incorrect. And it's not his fault, because we're on a motion to dismiss without the benefit of expert reports. But I want to correct them. So, one, he said that the defective rebar is encased in the wall. And that's actually not true, because when he was talking about how when you pour the cement, you encase the rebar. But something else happens when you pour the cement. You encase a steel embed. And the steel embed itself is referenced in the complaint on JA667 at paragraph 14. And the steel embed is work of another contractor, the steel contractor. So these things meet at the time of the defect. He also mentioned that the loss of structural capacity is in the future. And that's not at all what we're saying. If you look at CAP 31 and you go to JA697, it lays out a very complicated formula for calculating moment capacity. And that is a present calculation of moment capacity, not a future one. And again, this shouldn't be happening. This should be done with expert reports. And we're on a motion to dismiss. And that's the problem here. It may be, but it does seem like there is an agreement that the physical damage you're talking about is derivative of the damage to the walls. And your argument, I understand what it is. I appreciate your candor. You're not saying something bowed or was damaged in that way. You're saying it has current structural integrity effects. And that issue seems to be framed now. So whether that counts or not, I don't think we need discovery for that. Actually quantifying what you're saying exists, there might need to be discovery to fully understand that. You see what I'm saying? I think the issue is framed as a pleading issue in terms of how you describe the physical damage, taking it as true. You know, there's a question of whether that... But it's very important that I establish it's present. And once I establish it's present, it's plausible. Well, that's your position, and I hear you. And I think we've got to accept it's true that you've alleged it's present. So then my colleague mentioned the Slosser case. And my partner represented Slosser. And he passed away during briefing. And his notice of death is on the docket. And I know he wanted to be here to distinguish Slosser. So he can't be here, but I'll do my best. And in Slosser there was an excavation that started to fail. So the contractor filled it in. And they filled it in so that surrounding properties would not be damaged. But there was no allegation of any present undermining of those properties. And that's how it's different here. Here we have an allegation of a loss of structural capacity in the building's steel roof and second floor slab. In Slosser there was no allegation that anything had happened to the surrounding properties prior to filling in the excavation. Slosser's more like if you imagine these walls were built. You've got walls and you haven't built anything else. And something's wrong with them where they're not going to stand up. They're just going to fall down. It hadn't happened yet. But the defective structure might be compromised. This seems a little different because you're looking at the effect on other non-defective components. We are looking at other non-defective components that are presently damaged. Right. For sure. But I think Slosser's different in fact. It's a distinguishable case. I agree with that. And then finally, the Navy's letter is a claim under the Contract Disputes Act. And Garrick says that. And it's very important because if you're a contractor and you want to say appeal the decision, you're stuck. You can go to the Court of Federal Claims or you can go to the Armed Services Board of Contract Appeals. You can't go to any other court. That's part of this regulatory regime. And you can't go to court until you have a claim. Okay. Thank you, Counsel. Thank you, Your Honor. Appreciate it. Okay. We'll take this matter in advisement. We'll come down and greet Counsel and proceed to our last case. Thank you.
judges: A. Marvin Quattlebaum Jr., Toby J. Heytens, Nicole G. Berner